# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Mabuchi Motor America
Corporation,

          Plaintiff,

v.

Todd Dreisbach, *et al.*,

          Defendants.

_____/

Case No. 16-cv-12640

Judith E. Levy
United States District Judge

Mag. Judge Elizabeth A. Stafford

# ORDER GRANTING PLAINTIFF'S MOTION TO AMEND THE JUDGMENT [60] AND DENYING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AS MOOT [56]

The Court granted summary judgment in favor of plaintiff Mabuchi Motor America Corporation in this contract dispute on June 5, 2018. (Dkt. 54.) Plaintiff and defendant ABC Refrigeration, Heating, and Cooling entered into a contract for the sale of 40,000 motors at a price of $2.95 per motor, and defendant breached that contract when it failed to pay in full for those motors. (Dkt. 54 at 19.) Plaintiff is entitled to the amount owed under the contract, $108,000, in addition to $6,332 in storage costs for the undelivered motors. (Dkt. 54 at 20.)

Plaintiff now brings two motions: a motion for attorney's fees under Rule 54(d) (Dkt. 56) and a motion to amend the judgment to include interest under Rule 59(e). (Dkt. 60.)

As an initial matter, defendant argues that plaintiff's motion for attorney's fees is improper because attorney's fees authorized by contract are an element of damages that cannot be recovered in a Rule 54(d) motion.

Regardless of its validity, this argument is moot because plaintiff has filed a timely motion to alter or amend the judgment under Rule 59(e). When a party files a motion under Rule 59(e), a "judge may enlarge the issues to be considered" and amend any portion of the judgment. *E.E.O.C. v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the U.S. & Canada, Local No. 120*, 235 F.3d 244, 250 (6th Cir. 2000). A court is not limited to "those grounds upon which the motion is founded." *Id.* Accordingly, though plaintiff has not asked for attorney's fees in its motion to amend the judgment, the Court will consider both of plaintiff's requests – for attorney's fees and for interest – under Rule 59(e).

Plaintiff now brings two motions: a motion for attorney's fees under Rule 54(d) (Dkt. 56) and a motion to amend the judgment to include interest under Rule 59(e). (Dkt. 60.)

As an initial matter, defendant argues that plaintiff's motion for attorney's fees is improper because attorney's fees authorized by contract are an element of damages that cannot be recovered in a Rule 54(d) motion.

Regardless of its validity, this argument is moot because plaintiff has filed a timely motion to alter or amend the judgment under Rule 59(e). When a party files a motion under Rule 59(e), a "judge may enlarge the issues to be considered" and amend any portion of the judgment. *E.E.O.C. v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the U.S. & Canada, Local No. 120*, 235 F.3d 244, 250 (6th Cir. 2000). A court is not limited to "those grounds upon which the motion is founded." *Id.* Accordingly, though plaintiff has not asked for attorney's fees in its motion to amend the judgment, the Court will consider both of plaintiff's requests – for attorney's fees and for interest – under Rule 59(e).

**I. Legal Standard**

Under Rule 59(e), "a court may alter the judgment based on: '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)).

**II. Analysis**

a. <u>Interest on Damages</u>

Plaintiff argues the Court made a clear error of law when it held that "interest is not part of the damages available to a seller under Michigan's UCC."[1] (Dkt. 54 at 19 (citing *Firwood Mfg. Co., Inc. v. General Tire, Inc.*, 96 F.3d 163, 172 (6th Cir. 1996).) Plaintiff asks the Court to award it two types of interest: interest for the period after the complaint

---

[1] Rule 59(e) is the appropriate vehicle for plaintiff's request for interest. An "original request for interest . . . is to be assigned, by the Supreme Court's reasoning in *Osterneck*, to the dominion of Rule 59(e)." *Pogor v. Makita U.S.A., Inc.*, 135 F.3d 384, 388 (6th Cir. 1998) (citing *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 177 (1989)). "When a district court's original judgment does not mention an award of interest, then a later motion to fix interest . . . would amount to an original request for interest." *Id.*

was filed but before the judgment was issued and interest for the period after the judgment was issued.

"In diversity cases in this Circuit, federal law controls post-judgment interest but state law governs awards of prejudgment interest." *Estate of Riddle ex rel. Riddle v. S. Farm Bureau Life Ins. Co.*, 421 F.3d 400, 409 (6th Cir. 2005) (quoting *F.D.I.C. v. First Heights Bank, FSB*, 229 F.3d 528, 542 (6th Cir. 2000)).

### i. Pre-judgment Interest

Under Michigan law, "[i]nterest is allowed on a money judgment recovered in a civil action." Mich. Comp. Laws § 600.6013(1). Where "a judgment is rendered on a written instrument evidencing indebtedness with a specified interest rate, interest is calculated from the date of filing the complaint to the date of satisfaction of the judgment . . . ." § 600.6013(7). In other words, "MCL 600.6013(7) applies when certain criteria are met: the judgment must be 'rendered on' a written instrument, the instrument must evidence indebtedness, and there must be a specified interest rate." *Wyandotte Elec. Supply Co. v. Elec. Tech. Sys., Inc.*, 499 Mich. 127, 152 (2016). In addition, interest is only allowed

if "the rate specified in the instrument if the rate was legal at the time the instrument was executed." § 600.6013(7).

It was a clear error of law to not award plaintiff interest under § 600.6013(7) at a rate of thirteen percent compounded annually. First, the judgment was "rendered on a written instrument" because this case involved a contract claim, and the Court held there was an enforceable contract between the parties. *Cf. Wyandotte Elec. Supply Co.*, 499 Mich. at 152 (declining to apply § 600.6013(7) where "the underlying claim was not a contract claim"). Second, that "instrument [ ] evidence[d] indebtedness" because the contract bound defendant to pay plaintiff its outstanding debt of $108,000. *See* § 600.6013(7). Third, the contract in this case specified an interest rate that was legal at the time of contract formation. *See id.* The interest rate specified in the parties' contract is "the highest rate allowed by law." (Dkt. 17-1 at 4.) Thus, by operation of the statute, plaintiff is entitled to recover interest on defendants' debt for the time period between the filing of the complaint and the issuance of the judgment at a rate of "13% per year compounded annually." § 600.6013(7).

if "the rate specified in the instrument if the rate was legal at the time the instrument was executed." § 600.6013(7).

It was a clear error of law to not award plaintiff interest under § 600.6013(7) at a rate of thirteen percent compounded annually. First, the judgment was "rendered on a written instrument" because this case involved a contract claim, and the Court held there was an enforceable contract between the parties. *Cf. Wyandotte Elec. Supply Co.*, 499 Mich. at 152 (declining to apply § 600.6013(7) where "the underlying claim was not a contract claim"). Second, that "instrument [ ] evidence[d] indebtedness" because the contract bound defendant to pay plaintiff its outstanding debt of $108,000. *See* § 600.6013(7). Third, the contract in this case specified an interest rate that was legal at the time of contract formation. *See id.* The interest rate specified in the parties' contract is "the highest rate allowed by law." (Dkt. 17-1 at 4.) Thus, by operation of the statute, plaintiff is entitled to recover interest on defendants' debt for the time period between the filing of the complaint and the issuance of the judgment at a rate of "13% per year compounded annually." § 600.6013(7).

Under the statute, post-complaint interest is compound interest. Here, plaintiff requests $29,481.99 in interest, which appears to be simple interest. It is not clear from plaintiff's brief whether it is specifically requesting simple interest instead of compound interest. Plaintiff is entitled to recover interest on its judgment, but the Court requires clarity on how it should arrive at the correct amount. Accordingly, plaintiff has until 5 p.m. on August 31, 2018 to inform the Court whether it is asking for simple or compound interest.

### ii. Post-judgment Interest

"[F]ederal law controls post-judgment interest," *Estate of Riddle*, 421 F.3d at 409, and allows interest on "any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *Id.* "Interest shall be computed daily to the date of payment . . . ." §1961(b).

This case involves a "money judgment in a civil case recovered in a district court," and, thus, it was error to not award post-judgment

6

interest. The amount of post-judgment interest owed cannot be calculated until the judgment is paid, but will be "computed daily to the date of payment" at the statutory rate.

### b. Attorney's Fees

The Court also erred by not awarding plaintiff attorney's fees under the parties' contract. The contract is explicit in making attorneys' fees available to plaintiff, stating "[i]n the event of Seller's enforcement of any term or condition in the Contract, Purchaser shall be liable to Seller for all costs, including attorneys' fees, incurred by Seller in enforcing the Contract and in collecting any sums owed by Purchaser to Seller." (Dkt. 56-2 at 7.) Here, plaintiff was awarded a federal court judgment enforcing the payment provisions of the contract and entitling it to collect the "sums owed by Purchaser to Seller." (*Id.*)

"Following judgment on state-law claims in a diversity case, the assessment of the reasonableness of proposed attorneys' fees is a question of state law." *Poly-Flex Const., Inc. v. Neyer, Tiseo & Hindo, Ltd.*, 600 F. Supp. 2d 897, 914 (W.D. Mich. 2009); *see also Hometown Folks, LLC v. S & B Wilson, Inc.*, 643 F.3d 520, 533 (6th Cir. 2011) (citing *Poly-Flex*). Under Michigan law, "the burden of proving the reasonableness of

7

the requested fees rests with the party requesting them." *Smith v. Khouri*, 481 Mich. 519, 528–29 (2008).

A "trial court should begin its analysis by determining the fee customarily charged in the locality for similar legal services" and multiply it by "the reasonable number of hours expended in the case." *Id.* at 530. Once the court has calculated this number it should consider the remaining factors found in MRPC §1.5(a) and *Wood v. Detroit Auto. Inter-Ins. Exch.*, 413 Mich. 573 (1982) "to determine whether an up or down adjustment is appropriate." *Id.* at 531.

When viewed together, *Wood* and MRPC § 1.5(a) create a nine factor test for determining the reasonableness of attorneys' fees:

> (1) the professional standing, reputation, ability, and experience of the attorney;
> (2) the skill, time and labor involved;
> (3) the amount in question and the results achieved;
> (4) the novelty and difficulty of the case;
> (5) the expenses incurred;
> (6) the nature and length of the professional relationship with the client;
> (7) the likelihood, if apparent to the client, that the lawyer's acceptance of the particular employment will preclude other employment by the lawyer;
> (8) the time limitations imposed by the client or by the circumstances;
> (9) whether the fee is fixed or contingent.

*Poly-Flex*, 600 F. Supp. 2d at 916-17, n.8 (explaining that factors 1-4 and 6 are common to *Wood* and MPC § 1.5(a), factor 5 comes exclusively from *Wood*, and factors 7-9 come exclusively from MPC § 1.5(a)).

The first step in the analysis is for the Court to "determin[e] the fee customarily charged in the locality for similar legal services." *Smith*, 481 Mich. at 530. "The fees customarily charged in the locality for similar legal services can be established by testimony or empirical data found in surveys and other reliable reports." *Id.* at 531-32.

Plaintiff provides the Court with the State Bar of Michigan's "2017 Economics of Law Practice Attorney Income and Billing Rate Summary Report," and this report indicates that plaintiff's requested hourly rate of $297 is appropriate. (Dkt. 56-3.) The median "equity partner/shareholder" bills at $300 per hour, the median attorney with eleven to fifteen years of experience bills at $250 per hour, the median attorney in a firm with twenty-one to fifty attorneys in a single location bills at $307 per hour, and the median "business/commercial" litigator bills at $295 per hour. Though plaintiff's request of $297 per hour is above the median for an attorney with its attorney's experience, the request is

consistent with the billing practices of attorneys similar to plaintiff's in other important respects.

Plaintiff submits its counsel spent 296.7 hours on this case. (Dkt. 57 at 17.) It supports this assertion by providing the Court with a timesheet that shows each task counsel completed and the amount of time each task took. (Dkt. 57.) The timesheet calculates the time for each task to the tenth of an hour. Careful review of this timesheet indicates that plaintiff's counsel has only submitted to the Court those tasks that were necessary to litigate this case, and that counsel spent a reasonable amount of time on each. Thus, the starting point for the attorney's fee calculation is a total fee of $88,119.90.

The other factors the Court is required to consider do not militate for either "an up or down adjustment." *See Smith*, 481 Mich. at 531. First, plaintiff's attorney's "professional standing, reputation, ability, and experience" are all accounted for in the determination of his reasonable hourly rate, and nothing else about his resume stands out such that an additional adjustment is required.

Second, the "time and labor involved" are part of the computation of the reasonable number of hours spent on the case, and "the skill"

involved in litigating this action is not significant enough to warrant an upward or downward departure from the baseline calculation. Along the same lines, "the novelty and difficulty of the case," the fourth factor of the analysis, is not such that plaintiff's counsel should be awarded more or less in fees. Though this case was litigated extensively, in the end it was a fairly straightforward breach of contract action.

The third and fifth factors also do not indicate that a change from the baseline is appropriate. The third factor asks the Court to examine "the amount in question and the results achieved" while the fifth factor asks the Court to take into account the "expenses incurred." The amount in question was over $100,000, indicating the seriousness of this action, and plaintiff prevailed in full. Though the expense incurred is high relative to the judgment, defendant litigated this case aggressively, forcing plaintiff to respond and driving up the cost of litigation. As a result, neither of these factors indicate that the Court should adjust the fee.

There is no argument or evidence regarding factors six through eight, which require the court to look at "the nature and length of the professional relationship with the client; the likelihood, if apparent to the

client, that the lawyer's acceptance of the particular employment will preclude other employment by the lawyer; [and] the time limitations imposed by the client or by the circumstances." Because the information the Court would need to evaluate these factors is not in the record, the Court will not make any changes to the award based on them.

Last, factor nine, "whether the fee is fixed or contingent," cuts against altering the award. The fee in this case was fixed as counsel charged plaintiff an hourly rate for his services. The baseline fee is calculated not at the actual rate counsel charged plaintiff, but at what the Court has deemed a fair rate for counsel similar to plaintiff's counsel. Thus, this factor does not indicate the award should be altered.

For the reasons set forth above, the nine-factor analysis identified in *Smith* does not indicate that the Court should make any alterations to the baseline fee assessment in this case. Accordingly, plaintiff is entitled to recover attorney's fees in the amount of $88,119.90.

### III. Conclusion

The Court will amend its judgment in this case pursuant to Rule 59(e) to include an award of both pre- and post-judgment interest, as well as attorney's fees. With respect to pre-judgment interest, plaintiff is

ORDERED to inform the Court by August 31, 2018 whether it seeks simple or compound interest. Plaintiff is also entitled to an amount of post-judgment interest to be calculated according to the statute. In addition, defendant must pay plaintiff attorney's fees in the amount of $88,119.90. Accordingly, plaintiff's motion to amend the judgment (Dkt. 60) is GRANTED. Because plaintiff is awarded attorney's fees in its motion to amend the judgment, its motion for attorney's fees (Dkt. 56) is DENIED AS MOOT.

IT IS SO ORDERED.

Dated: August 23, 2018  
Ann Arbor, Michigan

s/Judith E. Levy  
JUDITH E. LEVY  
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 23, 2018.

s/Shawna Burns  
SHAWNA BURNS  
Case Manager